UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 6: 04-73-DCR |
| | ) | Civil Action No. 6: 09-7077-DCR |
| V. | ) | |
| | ) | |
| BENNY NEELEY, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant/Movant. | ) | **AND ORDER** |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of Defendant/Movant Benny Neeley's Motion to Set Aside Order and Judgment. [Record No. 153] Neeley filed a motion to vacate under 28 U.S.C. § 2255 on June 1, 2009. [Record No. 135] In accordance with local practice, the motion was referred to United States Magistrate Judge Hanly A. Ingram for initial consideration. On September 9, 2011, Magistrate Judge Ingram issued a Recommended Disposition advising that Neeley's § 2255 motion be denied. [Record No. 150] On September 28, 2011, nineteen days after the Recommended Disposition was filed, the Court entered a Memorandum Opinion and Order adopting the Recommended Disposition, denying Neeley's § 2255 motion, and dismissing the case. [Record No. 151] Then, on September 30, 2011, Neeley filed his objections to the Recommended Disposition. [Record No. 152] On October 7, 2011, Neeley filed a Motion to Set Aside Order and Judgment. [Record No. 153] Neeley claims that, because he was given fourteen days after his receipt of the Recommended Disposition to

-1-

file written objections, and he did not receive the Recommended Disposition until September 12, 2011, his objections were timely filed. [*Id.*, p. 1] The Court has now considered Neeley's objections. However, for the reasons discussed herein, those objections will be overruled. Accordingly, Neeley's motion to set aside the Court's earlier decision will be denied.

## I.

The facts relevant to Neeley's conviction are outlined in Magistrate Judge Ingram's Recommended Disposition. A 2003 Drug Enforcement Administration (DEA) investigation revealed that "several individuals in Laurel County, Kentucky were transferring large amounts of money through Western Union to Brownsville, Texas." [Record No. 150, p. 1] Through this investigation, the DEA discovered that Neeley was involved in trafficking marijuana from Mexico to Kentucky and that he was paying individuals to wire money on his behalf in furtherance of this scheme. [*Id.*, pp. 1-2] Neeley was charged with "operating a continuing criminal enterprise, conspiring to distribute and possess with intent to distribute marijuana, and conspiring to commit money laundering." [*Id.*]

As summarized by Magistrate Judge Ingram, the following evidence was presented at trial:

> Internal Revenue Service Agent Walter Woosley . . . testified that he had reviewed the Western Union records of wire transfers from Kentucky to Texas and determined that $334,990 worth of wire transfers had been made in furtherance of the drug trafficking operation. Woosley also offered opinion testimony that such an amount of money represented at least 410 pounds of marijuana. Woosley further explained that financial institutions such as Western Union are required to report transactions for over $10,000 and, therefore, individuals engaged in an illegal business break down their transactions into smaller amounts in an attempt to circumvent the reporting system.

> Other law enforcement officers also testified. Frank Antos, a special agent with the U.S. Forest Service, testified that he was present during the execution of the search warrant at Movant's residence. During the search, he testified that he recovered a piece of paper torn out of a spiral notebook which contained the names of individuals in Brownsville who were tied to the wire transfers. Kentucky State Police Detective Jason O'Bannon, who was also present during the search of Movant's residence, testified that Movant admitted to having received, in Movant's words, "dope" from Brownsville, Texas. O'Bannon testified that Movant told him such conduct had occurred in the past when Movant was living in Indiana, a statement O'Bannon believed was meant to distance Movant from the ongoing conspiracy.
>
> Seven witnesses testified that they wired money to Texas at Movant's request. Each testified that he or she had sent money from Movant to addresses in Brownsville on multiple occasions, and each stated they had received $100 as payment for sending the money. For example, a woman named Virginia Parsons testified that she and her husband had received packages containing marijuana on Movant's behalf, turned the packages over to him, and were then offered their choice of payment of either $900 or a pound of marijuana. Virginia Parsons testified that she was present when one of the packages was opened, and saw that it contained marijuana wrapped in cellophane. Likewise, a man named Melvin Jerome testified that he had received packages for Movant containing marijuana, one of which contained twenty-three pounds of marijuana hidden inside a speaker frame. He was permitted to keep one pound of marijuana as payment.

[*Id.* at 3-4 (record citations omitted)]

The jury found Neeley guilty on all counts. [Record No. 101] He was sentenced to 380 months of imprisonment for operating a continuing criminal enterprise, 240 months for conspiring to launder money, and 34 months for being a felon in possession of a firearm, to be served concurrently. [Record No. 103] Neeley's conviction was affirmed on appeal. He filed the present § 2255 motion on June 1, 2009. [Record Nos. 134, 135]

## II.

The Court reviews *de novo* the portions of the Recommended Disposition to which Neeley objects. *See* 28 U.S.C. § 636(b)(1)(C). Neeley makes nine objections to the magistrate

judge's Recommended Disposition. He argues that: (1) the magistrate judge's determination that he is not entitled to an evidentiary hearing was erroneous; (2) the magistrate judge improperly failed to consider the "use of evidence relating to the co-defendant Teri Marsee, and that the evidence was improper"; (3) his counsel was ineffective for failing to advise him as to all facts and law "relevant to his decision not to proceed to trial"; (4) the United States breached his plea agreement and, therefore, his Due Process rights were violated; (5) his counsel was ineffective for not interviewing government witnesses before trial; (6) his counsel was ineffective because he failed to present witnesses to testify on Neeley's behalf; (7) his counsel was ineffective for failing to request appropriate jury instructions or to object to insufficient instructions; (8) his counsel was ineffective for failing to move to dismiss the indictment; and (9) the lack of evidence mandates an evidentiary hearing.

At the outset, the Court summarily rejects Neeley's second objection, in which he asserts that the magistrate judge omitted "altogether any analysis or recommendation embracing the constitutional violations inherent in the presentation and use of evidence relating to the co-defendant Teri Marsee." [Record No. 152, p. 3] Neeley did not make this argument in his § 2255 motion. Thus, the magistrate judge did not "fail to address" it, because Neeley did not assert any such claim. He cannot add this argument now.

Regarding the rest of Neeley's objections, because many share a common theme, the Court will consider them in a slightly different order than that outlined by Neeley. First, the Court will address Neeley's assertion that the United States breached his plea agreement. Next, each claim of ineffective assistance of counsel will be considered in turn. And finally, the Court

will consider his objection to the magistrate judge's refusal to recommend an evidentiary hearing.

1.  **Due Process**

Neeley objects to the magistrate judge's finding that his Due Process rights were not violated with respect to the plea negotiations. [Record No. 152, p. 11] He contends that, after his arrest, he "agreed to cooperate in exchange for a recommendation that he be sentenced to a term of imprisonment of not more than 10 years." [*Id.*, p. 12] He argues that he believed he had reached an agreement with the United States and that it was "incumbent upon the AUSA and defense counsel to . . . reduce the agreement to a written document." [*Id.*, p. 13] He claims that, as a result of this misunderstanding, the information he provided in reliance on the alleged agreement was used against him at trial. [*Id.*, pp. 13-14] As discussed in the Recommended Disposition, this claim has been procedurally defaulted because Neeley failed to raise it on direct appeal. [Record No. 150, pp. 15-17] However, even assuming that this failure to do was the result of ineffective assistance of appellate counsel such that Neeley is not precluded from raising it here, the claim fails.

Neeley never entered into a plea agreement. He maintains that he provided the prosecution with valuable information and that he was "enthusiastic about entering a plea agreement." [Record No. 152, p. 14] However, as Assistant U.S. Attorney Roger West stated at the sentencing hearing:

> In this defendant's case, I prepared no less than four separate plea agreements. And in the period of time, ten days before the trial, he was given an opportunity to plead guilty to [conspiracy to knowingly and intentionally distribute and possess with intent to distribute marijuana] and chose not to.

[Record No. 130, p. 13]  Similarly, Neeley's trial counsel states that his client "refused to cooperate unless he could receive a specific sentence pursuant to a binding plea agreement." [Record No. 139-7, p. 3]  Therefore, not only was there no plea agreement, it is clear that Neeley understood that he did not enter into any agreement with the United States that would cap his sentence at ten years. [*See* Record 150, p. 17]  The United States does not owe him a duty based merely on plea negotiations. *Cf. Santobello v. New York*, 404 U.S. 257, 261-63 (1971) (holding that the United States breached its written plea agreement).[1]

Moreover, Neeley does not identify any information he provided that was actually used against him in the trial.  [Record No. 150, pp.18-19]  His defense counsel has even stated that his conviction "was not based upon information he provided during his proffer."  [Record No. 139-7, p. 4]  In fact, the plea negotiations broke down, in part, because "Mr. Neeley refused to admit personal wrongdoing.  He provided information on others but continued to distance himself from the drug conspiracy." [*Id.*, p. 2]  In short, Neeley is not entitled to relief based on this objection.

    **2.**    **Ineffective Assistance of Counsel**

Ineffective-assistance claims are evaluated using the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under *Strickland*, the defendant must first establish "that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

---

2    Whether Neeley was, as he claims, "forced" into pleading not guilty and proceeding to trial will be discussed below as part of the Court's discussion of his claims of ineffective assistance of counsel. [*See* Record No. 152, p. 14]

defendant by the Sixth Amendment." 466 U.S. at 687. In other words, the attorney's performance must fall below an "objective standard of reasonableness." *Id.* at 688. The second prong of the *Strickland* inquiry is whether the defendant was prejudiced by his attorney's deficient performance. *Id.* at 687. To satisfy the prejudice requirement, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When evaluating an ineffectiveness claim, the Court "must indulge a strong presumption" that counsel rendered effective assistance. *Id.* at 689. If either part of the *Strickland* test is not met, the Court's inquiry ends. *Id.* at 697 ("[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The magistrate judge rejected Neeley's claims of ineffective assistance because he did not show that his counsel's performance fell below an objective standard of reasonableness as required by *Strickland*. [Record No. 150, pp. 14-28] Neeley objects to this conclusion. Specifically, he argues that his counsel was ineffective because: (1) he failed to advise Neeley concerning all facts and law "relevant to his decision not to proceed to trial"; (2) he did not interview government witnesses before trial; (3) he failed to present witnesses to testify on Neeley's behalf; (4) he failed to request appropriate jury instructions or object to insufficient instructions; and (5) he failed to move to dismiss the indictment. [Record No. 152, pp. 10-11, 21-23]

### a. The Decision to Proceed to Trial

Neeley asserts that the magistrate judge erroneously determined that his counsel was not ineffective concerning the decision to proceed to trial. [Record No. 152, pp. 10-11] He argues that he "did not understand the parameters of the plea agreement, [or] the duration of the sentence that would eventually be imposed." [*Id.*, p. 11] Thus, Neeley claims that his decision to proceed to trial would have been different if his counsel had ensured that he had a "thorough understanding of the process." [*Id.*]

A defendant who alleges that his decision to plead guilty was the result of ineffective assistance "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (adopting *Strickland* test in context of guilty pleas). Here, the Court agrees with the magistrate judge that Neeley offered "no evidence that defense counsel withheld facts or law that would have led [him] to enter a guilty plea." [Record No. 150, p. 15] In fact, Neeley's defense counsel repeatedly urged him to accept the plea agreements offered by the United States. [Record No. 139-7, p. 3 ("Mr. Neeley again rejected the advice of counsel and chose to proceed to trial.")] Neeley's counsel's performance was not constitutionally deficient, and he is not entitled to relief based on this objection.

### b. Failure to Interview Government Witnesses

Neeley also objects to the magistrate judge's conclusion that his counsel was not ineffective for failing to interview the prosecution's witnesses before the trial. [Record No. 152, p. 21] He claims that if his defense counsel had interviewed these witnesses, he could have

prepared a more effective cross-examination. As explained in the Recommended Disposition, there is generally no duty to "call or even interview a witness whose testimony would not have exculpated the defendant." [Record No. 150, p. 20 (citing *Millender v. Adams*, 187 F. Supp. 2d 852, 877 (E.D. Mich. 2002))] Because Neeley has offered no evidence that any of the witnesses would have presented testimony exculpating him, he has failed to demonstrate that he suffered prejudice from his counsel's decision not to interview these witnesses. As a result, he is not entitled to relief on this objection.

### c. Failure to Present Witnesses on Behalf of Neeley

Next, Neeley objects to the magistrate judge's determination that his counsel was not ineffective for failing to present witnesses to testify on his behalf at trial. [Record No. 152, p. 22] The magistrate judge found that "Movant does not identify any witnesses that his attorney should have called, explain what testimony such witnesses would have offered, or explain how such testimony would have benefitted him." [Record No. 150, p. 22] In response, Neeley provides the conclusory statement that "[t]here is no need to describe the potential testimony with greater particularity."[2] [Record No. 152, p. 22] This assertion is incorrect. Without evidence as to the particular testimony that would have excused or exonerated him, Neeley has not met his burden to show a reasonable probability that the result of the trial would have been

---

2   Neeley does provide one particular description of proposed testimony. He claims that "the movant had one witness in the courtroom who was prepared to testify that a missing receipt for approximately $3,000 generated for a legitimate purpose had been given to Mr. Edwards the defense counsel." [Record No. 152, p. 22] However, it is unclear how this testimony would have benefitted Neeley at trial. The Court agrees with the magistrate judge's conclusion that it "appears especially unlikely that one witness's testimony to the effect that Movant possessed $3,000 for legitimate purposes would alter the outcome of the trial, given the 'overwhelming evidence' of Movant's guilt." [Record No. 150, p. 23]

different but for his counsel's deficient performance. Therefore, he is not entitled to relief on this objection.

### d. The Jury Instructions and Closing Arguments

Neeley objects to the magistrate judge's conclusion that his counsel was not ineffective concerning jury instructions or closing arguments. [Record No. 152, p. 23] Although Neeley did make this claim in his § 2255 motion, he now attempts to change his argument, objecting to "counsel's failure to procure a cautionary instruction to the jury advising them of Terri [sic] Marsee's alleged out-of-court statements to law enforcement officers . . . and the fact that she denied these statements or admissions to law enforcement officers." [*Id.*] As stated above, Neeley made no mention of Teri Marsee in his § 2255 motion. As a result, this objection is an impermissible attempt to change his argument on this point to avoid the magistrate judge's conclusions, and no relief is warranted.

### e. Counsel's Failure to Move to Dismiss the Indictment

Neeley objects to the magistrate judge's characterization of this claim as an argument that his counsel was ineffective for "not moving to dismiss the indictment at sentencing." [Record No. 150, p. 24] Neeley now asserts that his contention was that "counsel was obliged to move to dismiss the indictment at the *pre-trial stage* because it was not contemplated by the parties to an agreement that an indictment would be necessary in view of the movant's agreement to plead guilty and the routine established in this Court for utilizing an [i]nformation in these instances rather than an indictment." [Record No. 152, p. 23 (emphasis added)] Aside from the fact that Neeley's § 2255 motion did indeed refer only to the failure of his counsel to move for

dismissal of the indictment "during the sentencing process" [Record No. 135, p. 18], this argument is also based on his objection regarding his plea negotiations with the United States, which the Court has already rejected.

3.      **Evidentiary Hearing**

Neeley argues that he is entitled to an evidentiary hearing, and he objects to the magistrate judge's recommendation that his request for a hearing be denied. [Record No. 152, p. 1; *see* Record No. 150, p. 30] He correctly points out that the Court must hold an evidentiary hearing unless the record shows conclusively that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b). In support, he maintains that allegations of ineffective assistance of counsel "normally do not arise in such a manner that the issue is deemed resolved conclusively by the 'record.'" [Record No. 152, p. 3 (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986))] While that may be true in some cases, the record here is more than sufficient to decide these claims. Neeley's trial counsel has submitted an affidavit that addresses most, if not all, of Neeley's assertions. [Record No. 139-7] That evidence, along with the trial and sentencing transcripts, provides the Court with a sufficient record to decide Neeley's claims.

As his final "objection," Neeley argues that "the arguments advanced herein can be proved . . . through the placement of relevant witnesses on the stand and [the] conduct[ing] of effective cross-examination." [Record No. 152, p. 24] In other words, Neeley believes that an evidentiary hearing is necessary to prove his assertion that he had an enforceable plea agreement which was breached by the United States. [*Id.*, p. 19 ("An evidentiary hearing would inextricably reveal the existence of detrimental reliance on the plea agreement.")] However,

Neeley fails to demonstrate what evidence, if any, would be elicited in such a hearing. While it is true that the burden on the petitioner for establishing "entitlement to an evidentiary hearing is relatively light," that burden cannot be met by unsubstantiated and conclusory allegations. *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999) ("[I]t would be nonsensical to conclude that the petitioner could meet that burden simply by proclaiming his innocence."). Neeley has not demonstrated that any of his claims are meritorious and he is not entitled to an evidentiary hearing.

### III.

Neeley has failed to meet his burden for habeas relief. His counsel made reasonable decisions in light of the circumstances presented and he has failed to shown any error of constitutional magnitude. Accordingly, it is hereby

**ORDERED** that

(1) Movant/Defendant Benny Neeley's Motion to Set Aside Order and Judgment [Record No. 153] is **DENIED**.

(2) Movant/Defendant Benny Neeley's Objections to Findings and Recommendations of United States Magistrate Judge in 28 U.S.C. § 2255 Proceeding [Record No. 152] are **OVERRULED**.

This 9th day of November, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge